UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC CHOICE SEAFOOD COMPANY, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>PENNY PRITZKER, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-05572-HSG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

Pending before the Court is a motion to dismiss Plaintiffs' first amended complaint brought by Federal Defendants Penny Pritzker, in her official capacity as United States Secretary of Commerce, and the National Marine Fisheries Service. Dkt. No. 22 ("MTD"). For the reasons articulated below, the motion to dismiss is DENIED.

**I.　BACKGROUND**

　　**A.　Regulatory Background**

The Magnuson-Stevens Fishery Conservation and Management Act (the "Magnuson Act") was established in part "to take immediate action to conserve and manage the fishery resources found off the coasts of the United States." 16 U.S.C. § 1801(b)(1).[1] The Magnuson Act establishes eight Regional Fishery Management Councils that are each responsible for preparing a proposed fishery management plan ("FMP") and related amendments directed at the conservation and management of the fishery's resources. 16 U.S.C. § 1852(a),(h).

Each Council proposes FMPs, FMP amendments, and implementing regulations to the National Marine Fisheries Service ("NMFS") for review and approval. Dkt. No. 14 ("FAC")

---

[1] The Court takes judicial notice of sections of the United States Code because the United States Code is publicly available and not subject to reasonable dispute. *See* Fed. R. Evid. 201(b).

¶¶ 24-25. Upon receipt of a proposal, NMFS reviews the proposal to determine if it is consistent with national standards and applicable law, publishes the proposal, and requests public comment. 16 U.S.C. § 1854(1). After the public comment period, NMFS may approve, disapprove, or partially approve a proposed FMP, amendment, or regulation. 16 U.S.C. § 1854(2).

NMFS may approve a limited access privilege program ("LAPP") to achieve optimum yield for any fishery. 16 U.S.C. § 1853(b)(6); 16 U.S.C. § 1853a. LAPPs must promote "fishing safety," "fishery conservation and management," and "social and economic benefits." 16 U.S.C. § 1853a. They also must "establish procedures to ensure fair and equitable initial allocations" of fish harvests and "ensure that limited access privilege holders do not acquire an excessive share of the total limited access privileges in the program." *Id.*

### B. Factual Background

In this action, Plaintiffs Pacific Choice Seafood Company, Sea Princess, LLC, and Pacific Fishing, LLC "challenge decisions of [NMFS] that establish and implement an individual transferable quota program (the 'IFQ Program') for the Pacific Coast shorebased groundfish limited-entry trawl fishery." FAC ¶¶ 5, 30-32.

In 2010, NMFS partially approved Amendments 20 and 21 to the Pacific Fishery Management Council's FMP (the "Pacific FMP") and published the associated implementing regulations. *Id.* ¶ 33. At that time, the IFQ Program established four regulatory components at issue in the current action: (1) a 2.7% aggregate limit on the amount of total quota share ("QS") of all non-whiting species fished in the Pacific Fishery that a person or entity may own or "control"; (2) a control rule that defines "control" as "the ability through any means whatsoever to control or have a controlling influence" over QS; (3) a divestiture rule that required any participant whose ownership or control of QS exceeded the 2.7% limit to divest his excess share by November 30, 2015; and (4) a revocation provision providing that excess QS not divested by the November 30, 2015, deadline would be automatically revoked by NMFS (together, the "2010 Regulations"). *Id.* ¶ 5; Dkt. No. 32 ("Opp'n") at 4-5. On September 2, 2015, NMFS published an additional proposed rule that set out specific divestiture-related deadlines, created a process for revocation of QS, added an option for the abandonment of QS, established that excess QS would be

1 proportionally revoked across fish species and permits, and reaffirmed that revoked QS would be
2 proportionally distributed among the Pacific Fishery participants.  FAC ¶ 34 (citing 80 Fed. Reg.
3 53,088 (September 2, 2015) (to be codified at 50 CFR pt. 660)).  On November 9, 2015, after the
4 required public comment period, NMFS issued the proposed rule as a final rule (the "November
5 2015 Rule").  Opp'n at 7; FAC ¶ 34; 80 Fed. Reg. 53,088 (September 2, 2015) (to be codified at
6 50 CFR pt. 660); 80 Fed. Reg. 69,138 (November 9, 2015) (codified at 50 CFR pt. 660).  The
7 November 2015 Rule applied the IFQ Program's revocation provisions beyond the November 30,
8 2015, deadline into the future.  FAC ¶ 34 (citing 80 Fed. Reg. 53,088 (September 2, 2015) (to be
9 codified at 50 CFR pt. 660)); 80 Fed. Reg. 69,138 (November 9, 2015) (codified at 50 CFR pt.
10 660); Opp'n at 7-8. [2]

11     Plaintiffs filed their complaint within 30 days of the November 2015 Rule and articulate
12 six claims for relief that can be summarized as follows:  Claims one through four allege that
13 substantive provisions of the IFQ Program established under the 2010 Regulations violate the
14 Administrative Procedures Act ("APA") and the Magnuson Act.  Claim five alleges that aspects of
15 the 2010 Regulations violate the APA and the National Environmental Policy Act ("NEPA").
16 Finally, claim six asserts that the November 2015 Rule violates the APA, NEPA, and the
17 Magnuson Act.  *See id.* ¶¶ 43-86.

18 **II.**    **DISCUSSION**

19     Defendants move to dismiss claims one through five as time-barred by the Magnuson
20 Act's 30-day judicial review provision.  *See* MTD at 10-11.  Defendants further assert that claim
21 six should be dismissed because (1) Plaintiffs lack Article III standing to challenge the November
22 2015 Rule and (2) Plaintiffs fail to state a claim upon which relief can be granted.  *Id.* at 10, 19-25.

23     **A.**    **Rule 12(b)(1) Legal Standard**

24     Rule 12(b)(1) allows a defendant to move for dismissal on grounds that a court lacks
25 jurisdiction over the subject matter of an action.  Fed. R. Civ. P. 12(b)(1).  The plaintiff bears the

---

[2] The Court takes judicial notice of the 2010 Regulations; 80 Fed. Reg. 53,088 (September 2, 2015) (to be codified at 50 CFR pt. 660); and the November 2015 Rule because they are publicly available and not subject to reasonable dispute.  *See* Fed. R. Evid. 201(b).

burden of establishing a court's subject matter jurisdiction. *See Assoc. of Am. Medical Colleges v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-78 (1994).

"A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either 'facially' or 'factually.'" *Thornhill Publishing Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In resolving a "facial" attack, a court limits its inquiry to a plaintiff's allegations, which are taken as true, and construes the allegations in the light most favorable to the plaintiff. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

### B. Rule 12(b)(6) Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### C. The 2010 Regulations (Claims One Through Five)

Plaintiffs' first five claims challenge provisions of the IFQ Program established under the

2010 Regulations. *See* FAC ¶¶ 43-74. Defendants contend that claims one through five are time-barred by the Magnuson Act's statute of limitations because this action was "filed nearly five years after the closure of the Magnuson Act's 30-day review provision." MTD at 10. Further, Defendants assert that the November 2015 Rule "is not an 'action' as defined in the Magnuson Act." *Id.* at 12. Plaintiffs respond that the November 2015 Rule constitutes an "action" taken under regulations implementing the 2010 Regulations, and thus, by filing this action within thirty days of the November 2015 Rule, Plaintiffs can challenge both the November 2015 Rule and the 2010 Regulations. Opp'n at 11. The Court agrees with Plaintiffs at this stage.[3]

The Magnuson Act states:

> (f) Judicial review
> **(1)** Regulations promulgated by the Secretary under this chapter ***and*** actions described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated ***or*** the action is published in the Federal Register, as applicable; except that--
> **(A)** section 705 of such Title is not applicable, and
> **(B)** the appropriate court shall only set aside any such regulation or action on a ground specified in section 706(2)(A), (B), (C), or (D) of such Title.
> **(2)** The actions referred to in paragraph (1) are actions that are taken by the Secretary under regulations which implement a fishery management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing.

16 U.S.C. § 1855(f) (emphasis added). The Ninth Circuit has held that "[t]he text of the amended § 1855(f)(1) provides that a plaintiff may challenge both an action and a regulation under which the action is taken so long as the suit is filed within thirty days of the action's publication in the Federal Register." *Oregon Trollers Ass'n v. Gutierrez*, 42 F.3d 1104, 1113 (9th Cir. 2006). "The conjunctive 'and' . . . indicates that both regulations *and* actions are reviewable in a timely filed

---

[3] Defendants urge the Court to dismiss claims one through five under Rule 12(b)(1) because the Court lacks jurisdiction over claims brought outside the Magnuson Act's 30-day limitations period. *See* MTD at 10-12. Despite their position, Defendants acknowledge that the Supreme Court has more recently indicated that limitations statutes might be more appropriately addressed under Rule 12(b)(6). *Id.* at 11 n. 2 (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 822 (2013)). Because the Court holds that Plaintiffs sufficiently allege a timely challenge to the 2010 Regulations under either a 12(b)(1) or a 12(b)(6) standard, the Court need not resolve the debate in this Order.

petition." *Id.* (emphasis in original). "The disjunctive 'or' . . . indicates that a petition is timely if it is filed within thirty days of either promulgation of the regulation *or* publication of the action." *Id.* (emphasis in original). In contrast, "plaintiffs may not use challenges to FMP amendments as a vehicle for raising objections to provisions of the FMP that were previously implemented." *Oceana, Inc. v. Bryson*, 940 F. Supp. 2d 1029, 1044 (N.D. Cal. 2013).

The Ninth Circuit's holding in *Oregon Trollers* and the Eleventh Circuit's subsequent application of *Oregon Trollers* persuade the Court that Plaintiffs have sufficiently alleged a timely challenge to the 2010 Regulations at the pleading stage. In *Gulf Fishermen's Ass'n v. Gutierrez*, 529 F.3d 1321 (11th Cir. 2008), plaintiffs challenged a Gulf of Mexico FMP amendment and implementing regulations that required owners and operators of certain vessels in the Gulf of Mexico to install and maintain an NMFS-approved Vessel Monitoring System ("VMS"). On August 9, 2006, NMFS published a final rule implementing the VMS requirement and establishing December 7, 2006, as the effective date of the requirement. *Gulf Fishermen*, 529 F.3d at 1322. On December 6, 2006, NMFS delayed the effective date of the VMS requirement until March 7, 2007, to provide those affected with additional time to comply with the regulation. *Id.* Within 30 days of the December 6, 2006, action delaying the effective date of the VMS requirement, plaintiffs filed suit challenging the VMS requirement that was implemented on August 9, 2006. *Id.* Making an argument similar to Defendants' contentions here, NMFS asserted that the December 6, 2006, rule was more akin to a separate regulation than an "action" as defined by the Magnuson Act. *Id.* at 1323. The Eleventh Circuit reversed the district court's order granting summary judgment in favor of defendants, finding that plaintiffs could challenge both the FMP amendment and its implementing regulations because "[t]he effective date is an indispensable part of the substance of the regulation." *Id.* Because the VMS requirement had no legal effect prior to its effective date, it was only "logical that delaying that effective date must be considered an action taken under the regulation, not a separate regulation." *Id.* The Eleventh Circuit reasoned that plaintiffs would not have known whether a petition for judicial review was necessary until the effective date of the action. *Id.* at 1324.

Applying the rationale of *Oregon Trollers* and *Gulf Fishermen*, the Court holds that

1    Plaintiffs have established a potentially timely challenge to the 2010 Regulations. The November
2    2015 Rule finalized NMFS's "proposed action" to "further implement original QS divestiture
3    provisions of the trawl rationalization program: proportional reduction of QS and abandonment."
4    80 Fed. Reg. 53,088 (September 2, 2015) (to be codified at 50 CFR pt. 660); 80 Fed. Reg. 69,138
5    (November 9, 2015) (codified at 50 CFR pt. 660). Plaintiffs allege that the November 2015
6    procedures for proportional reduction of QS and abandonment established "how NMFS would
7    revoke shares from a person or entity that is over an individual species control limit across several
8    QS permits" and "how NMFS would revoke shares from a person or entity that is over the
9    aggregate nonwhiting control limit." *See* 80 Fed. Reg. 53,088 (September 2, 2015) (to be codified
10   at 50 CFR pt. 660); 80 Fed. Reg. 69,138 (November 9, 2015) (codified at 50 CFR pt. 660).
11   Moreover, Plaintiffs assert that the November 2015 Rule continued the revocation and
12   abandonment procedures established in 2010 into the future beyond the initial November 30,
13   2015, divestiture deadline. *See* 80 Fed. Reg. 53,088 (September 2, 2015) (to be codified at 50
14   CFR pt. 660); 80 Fed. Reg. 69,138 (November 9, 2015) (codified at 50 CFR pt. 660).
15         In all key respects, these claims parallel those considered by the Eleventh Circuit in *Gulf*
16   *Fishermen*. The proportional reduction and abandonment procedures are an "indispensable part of
17   the substance" of the IFQ program established and implemented under the 2010 Regulations, and
18   an adjustment to a regulation's effective date "must be considered an action taken under the
19   regulation, not a separate regulation." *See Gulf Fishermen*, 529 F.3d at 1323. Although the
20   November 2015 Rule was promulgated more than five years after the 2010 Regulations, at the
21   pleading stage, Plaintiffs have adequately alleged that the November 2015 Rule was an action
22   "taken . . . under regulations which implement a fishery management plan" because NMFS
23   "derive[d] authority" to implement proportional reduction of QS and abandonment from the 2010
24   Regulations. *See Glacier Fish Co. LLC v. Pritzker*, No. C14-40 MJP, 2015 WL 71084, at *4
25   (W.D. Wash. Jan. 6, 2015). Accordingly, Plaintiffs have alleged a potentially timely challenge to
26   both the 2010 Regulations and the November 2015 Rule.
27         Defendants maintain that the November 2015 Rule is a "revision" of the 2010 Regulations
28   rather than an "action" taken under those regulations. MTD at 13. According to Defendants,

"revisions" are more akin to amendments, which do not permit Plaintiffs to challenge previously implemented provisions of the Pacific FMP. *See id.* at 13 n. 4; *Oceana, Inc.*, 940 F. Supp. 2d at 1044. The Court is not persuaded. Defendants cite no case law that distinguishes "revisions" of prior regulations implementing an FMP from "actions" taken thereunder. Rather, Defendants cite three cases from outside this jurisdiction, all of which predate the Ninth Circuit's decision in *Oregon Trollers*. *See* MTD at 13 n.4 (citing *Connecticut v. Daley*, 53 F. Supp. 2d 147 (D. Conn. 1999), *aff'd*, 204 F.3d 413 (2nd Cir. 2000); *Tex. Shrimp Ass'n v. Daley*, 4:00CV20-RH, 2000 WL 35938412 (N.D. Fl. Apr. 12, 2000), *aff'd sub nom.*, *Texas Shrimp Ass'n v. Evans*, 273 F.3d 397 (11th Cir. 2001); and *N.C. Fisheries Ass'n v. Evans*, 172 F. Supp.2d 792 (E.D.Va. 2001)).

Because the Court cannot dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of a claim," *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995), and Plaintiffs have sufficiently alleged a potentially timely challenge to the 2010 Regulations, the Court DENIES Defendants' motion to dismiss claims one through five.

### D. The November 2015 Rule (Claim Six)

In their sixth claim, Plaintiffs assert that the November 2015 Rule violates the Magnuson Act, the APA, and NEPA. FAC ¶¶ 75-86. NMFS moves to dismiss Plaintiffs' sixth claim for two reasons: (1) Plaintiffs lack Article III standing to challenge the November 2015 Rule and (2) Plaintiffs have failed to state a claim upon which relief can be granted. MTD at 19-25.

#### i. Article III Standing

First, Defendants contend that Plaintiffs' sixth claim fails to adequately allege Article III standing because Plaintiffs do not articulate an injury fairly traceable to the November 2015 Rule. *Id.* at 19. The Court disagrees.

The Article III case or controversy requirement is "a fundamental limitation on a federal court's authority to exercise jurisdiction." *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n.*, 457 F.3d 941, 949 (9th Cir. 2006). Article III standing requires "(1) that plaintiffs had suffered an injury in fact that was concrete and particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged conduct; and (3) that the injury was likely to be

redressed by a favorable court decision." *Levine v. Vilsack*, 587 F.3d 986, 991-92 (9th Cir. 2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The party invoking federal jurisdiction bears the burden of establishing Article III standing. *Lujan*, 504 U.S. at 561. When the plaintiff is the object of government action or inaction, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561-62. More, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561.

Defendants do not dispute that Plaintiffs are the object of the November 2015 Rule. Instead, Defendants assert that (1) the majority of Plaintiffs' sixth claim for relief recasts their time-barred challenge to the 2010 Regulations and (2) Plaintiffs cannot have not suffered an injury fairly traceable to the November 2015 Rule because Plaintiffs "voluntarily divested quota shares prior to the November 30, 2015 deadline, meaning that the proportional reduction methodology could not apply to [them]." MTD at 19-21.

To the extent that Plaintiffs' sixth claim for relief repackages their challenge to the 2010 Regulations, the Court has found above that Plaintiffs have sufficiently alleged a timely claim at the motion to dismiss stage. Plaintiffs must comply with the requirements imposed by the 2010 Regulations, and there thus is little question that the 2010 Regulations have caused Plaintiffs injury that can be redressed by a judgment in their favor. *See Lujan*, 504 U.S. at 561-62.

Plaintiffs have also adequately alleged Article III standing to the extent that Plaintiffs' sixth claim independently challenges the November 2015 Rule. Plaintiffs are again the object of the November 2015 Rule, which extends the divestiture and revocation processes into the future beyond the original November 30, 2015, divestiture date. As active participants in the Pacific Fishery regulated by the Pacific FMP, *see* FAC ¶¶ 15-17, Plaintiffs have alleged a credible threat that they will be required to comply with the divestiture and revocation requirements into the future. *See Hartman v. Summers*, 120 F.3d 157, 160 (9th Cir. 1997). Moreover, if the November 2015 Rule is found to violate the APA, NEPA or the Magnuson Act, Plaintiffs' injuries likely will be redressed.

9

1    Accordingly, the Court finds that Plaintiffs have adequately alleged Article III standing at

2    the motion to dismiss stage, and DENIES Defendants' motion to dismiss on this basis.

### ii.  Failure to State a Claim

Next, Defendants assert that Plaintiffs' sixth claim fails to state a claim upon which relief can be granted because it either restates their time-barred claims or challenges decisions not subject to judicial review. MTD at 22-25. Again, the Court disagrees.

At the pleading stage, Plaintiffs have articulated a potentially timely challenge to the 2010 Regulations. Thus, to the extent that Defendants move to dismiss Plaintiffs' sixth claim because it simply repackages challenges to the 2010 Regulations, Defendants' motion is denied.

Defendants' remaining arguments for dismissing Plaintiffs' sixth claim require the Court to make factual inferences, and thus are properly considered at the summary judgment stage, not on a motion to dismiss. For example, Defendants contend that if Plaintiffs believed that the November 2015 Rule required NMFS to perform a supplemental NEPA analysis, "Plaintiffs were required to raise this contention during the public comment period . . . and the response to comments in the final rule does not indicate that NMFS received any comments pertaining to NEPA." MTD at 23. Similarly, Defendants assert that Plaintiffs cannot challenge NMFS's failure to consider an auction system for revoked QS because "the auction alternative was apparently never even raised to the Council during the 2015 rulemaking process." *Id.* at 24. At the motion to dismiss stage, the Court must take Plaintiffs' allegations as true and may not engage in the type of fact-finding process that Defendants' contentions invite.

Because this action is still in the pleadings stage, the Court DENIES Defendants' motion to dismiss Plaintiffs' sixth claim. If discovery reveals facts that support Defendants' assertions that Plaintiffs' sixth claim must fail, the Court will consider that evidence at the summary judgment stage.

//
//
//
//

**III.     CONCLUSION**

For the aforementioned reasons, the Court DENIES Defendants' motion to dismiss in its entirety.  The Court sets a case management conference for August 16, 2016 at 2:00 p.m.  The parties shall file a joint case management statement by August 9, 2016.

**IT IS SO ORDERED.**

Dated:  July 20, 2016

                                        HAYWOOD S. GILLIAM, JR.
                                        United States District Judge